1

2

3

4

5

6

7

8                           **UNITED STATES DISTRICT COURT**

9                           **EASTERN DISTRICT OF CALIFORNIA**

10

11   S.M.A., a Minor, by his Guardian ad Litem          Case No. 1:20-cv-01767-JLT-BAM

12   CEDRIC ALFORD,                                      ORDER GRANTING IN PART AND
                                                         DENYING IN PART DEFENDANTS'
13                  Plaintiff,                           MOTION TO DISMISS

14   v.                                                  (Doc. 13)

15   MODESTO CITY SCHOOL DISTRICT,
     SEAN DAVIS, MICHAEL COATS, BRIAN
16   BERGERSON, RYAN MCCAY, MARLA
     MACK, and DOES 1 to 50, inclusive,
17

18                  Defendants.

19          At the time he initiated this action, S.M.A. was a student at Grace Davis High School in

20   the Modesto City School District. (Doc. 12 at 3, ¶ 15.) S.M.A., by and through his guardian ad

21   litem Cedric Alford, brings a 42 U.S.C. § 1983 action asserting claims for denial of procedural

22   due process under the Fifth and Fourteenth Amendments of the United States Constitution and for

23   discrimination under Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, *et seq*.,

24   arising from disciplinary actions and his temporary suspension. (*See generally id.*) On March 21,

25   2021, Defendants filed a motion to dismiss the complaint for failure to state a claim under Federal

26   Rule of Civil Procedure 12(b)(6) and to strike the request for punitive damages under claim under

27   Title IX. (Doc. 13.) For the reasons set forth below, the Court **GRANTS in part** and **DENIES in**

28   **part** Defendants' motion.

                                                  1

## I.    FACTUAL BACKGROUND

On December 17, 2018, another student recorded a snap chat video that, according to Grace Davis High School administrators, depicted S.M.A. and his girlfriend engaged in sexual activity in the classroom. (Doc. 12 at 4, ¶¶ 24-25.) S.M.A. disputes this contention and alleges the video only shows his girlfriend "had rested her arms on Plaintiff's knee with her head resting on her arms." (*Id.* at 6, ¶ 28.) Davis, vice principal of the high school, received the video and interviewed several student witnesses who confirmed that the sexual act occurred. (*Id.* at 4-5, ¶ 25.) On December 19, 2018, Davis issued three-day suspension to S.M.A. (*Id.*) S.M.A. maintains that he did not engage in sexual activity in the classroom and was not afforded an opportunity to tell his side of the story prior to his suspension. (*Id.* at 5, ¶ 26.)

On December 21, 2018, S.M.A.'s parental guardians met with Davis to discuss the suspension. (Doc. 12 at 5-6, ¶¶ 27-29.) According to the complaint, Davis viewed the video with S.M.A.'s guardians but refused to give them a copy. (*Id.*) He admitted that he interviewed only four of the twenty students in the classroom on the day of the incident. (*Id.*) Davis did not allow S.M.A. or his guardians to view the witnesses' statements or to cross-examine them. (*Id.*) Over the next few months, S.M.A.'s guardians met with other school administrators, including Coats, principal of Grace Davis High, and Mack, assistant superintendent of Modesto City School District. (*Id.* at 7-8, ¶¶ 32-36.) S.M.A. and his guardians sought to have the suspension expunged from his record, but Defendants refused. (*Id.*) Defendants relied on the allegedly false assumption that the snap chat video showed S.M.A. engaging in sexual conduct. (*Id.*) Defendants refused to provide statements of the student witnesses, the witnesses names, or a copy of the snap chat video. (*Id.*) S.M.A. contends that Defendants actions violated his procedural due process rights. (*Id.* 8-9, ¶ 37.) He further alleges that he suffered "humiliation, post traumatic stress, anxiety, lack of trust in authority figures, loss of sleep, loss of self esteem [sic], nervous ticks, humiliation, and embarrassment." (*Id.* at 9, ¶ 38.)

S.M.A. also contends that Defendants violated Title IX by discriminating against him based on sex and race. (Doc. 12 at 9.) S.M.A. alleges that he experienced severe and ongoing sexual harassment from other students and teachers because of the snap chat video and the

associated suspension. (*Id.* at 10-11, ¶ 46.) According to the complaint, Defendants took no disciplinary action against these students and teachers or against the individual who posted the snap chat video. (*Id.*) S.M.A. alleges he was kicked off the junior varsity basketball team because of his suspension, even though the school allowed his girlfriend to remain on the women's basketball team. (*Id.* at 10, ¶¶ 45.) S.M.A.'s guardians allegedly alerted school administrators and the Modesto City School District during several meetings of the sexual harassing comments that S.M.A. faced. (*Id.* at 10-11, ¶ 46.) S.M.A. sought family therapy and medical treatment to cope with his school environment. (*Id.* at 13, ¶ 50.) S.M.A. seeks compensatory, special, and punitive damages and attorneys' fees and costs under his procedural due process claim and his Title IX claim. (*Id.* at 13-14.)

## II.   LEGAL STANDARDS

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal of a claim under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Thus, under Rule 12(b)(6), "review is limited to the complaint alone." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993).

The Supreme Court held: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted).

"The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is

1  entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings

2  that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S.

3  232, 236 (1974). The Court "will dismiss any claim that, even when construed in the light most

4  favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action."

5  *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). To the extent

6  pleading deficiencies can be cured by the plaintiff alleging additional facts, leave to amend should

7  be granted. *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir.

8  1990) (citations omitted).

9  **III.    DISCUSSION**

10  **A.    Procedural Due Process Claim**

11  S.M.A. contends that Defendants violated his right to procedural due process because they

12  used improper procedures before imposing his suspension and during the process in which his

13  guardians attempted to have the suspension removed from his record. (Doc. 12 at 4-9.)

14  Defendants challenge the sufficiency of the procedural due process claim on three bases. First,

15  Defendants contend that undisputed facts show S.M.A. was afforded sufficient procedural due

16  process prior to his suspension. (Doc. 13-1 at 7.) Second, Defendants argue that S.M.A. has no

17  protected interest in his participation in school basketball team such that any process was due

18  prior to his removal. (*Id.* at 7-8.) Third, Defendants contend that the complaint does not

19  sufficiently plead causation or personal involvement by the named Defendants. (*Id.* at 8-13.)

20  1.    Sufficiency of Procedures Afforded to S.M.A.

21  Defendants argue they afforded S.M.A. more process than was required because Davis

22  notified S.M.A. of his suspension and the reasons for the decision prior to suspending him and

23  provided him an opportunity to tell his side of the story "within a reasonable time after the

24  imposition of the suspension." (Doc. 13-1 at 7.) In opposition, S.M.A. argues that the failure to

25  provide him with a hearing *prior to* his suspension violates his procedural due process rights.

26  (Doc. 16 at 7-8.)

27  Under the Due Process Clause of the Fourteenth Amendment, "No State shall . . . deprive

28  any person of life, liberty, or property, without due process of law." U.S. Const., Amend. XIV

§ 1. This clause guarantees that the government provide procedural due process when it dispossesses an individual of a liberty or property interest. *See Armstrong v. Manzo*, 380 U.S. 545, 550 (1965). To state a claim for procedural due process, the plaintiff must show: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government, and (3) lack of process." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). The amount of process that is required varies based on the specific circumstances, but courts generally rely on the following factors: the private interest that will affected by the government actions; the risk of an erroneous deprivation and the probable value of additional or substitute procedural safeguards; and the government's interest. *Matthews v. Eldridge*, 424 U.S. 319, 334-35 (1976).

Suspension from public education, even temporarily, constitutes deprivation of a protected property interest that requires at least some procedural due process. *See T.T. v. Bellevue Sch. Dist.*, 376 F. App'x 769, 770 (9th Cir. 2010). The Supreme Court has held that notice and a hearing must be afforded to the student facing suspension. *Goss v. Lopez*, 419 U.S. 565, 579 (1975). The hearing may be informal and may simply provide an opportunity for the student to provide his version of the facts; however, "as a general rule notice and hearing *should precede* removal of the student from school." *Id.* at 580-82 (emphasis added) ("[T]he student [must] be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story."); *see also C.R. v. Eugene Sch. Dist. 4J*, 835 F.3d 1142, 1153 (9th Cir. 2016) ("The Constitution requires only informal procedures when schools suspend students for ten days or fewer."). If the student poses a danger to persons or property or a threat of ongoing disruption to the academic process, the notice and hearing may occur after removal. *Goss*, 418 U.S. at 582-83.

S.M.A.'s allegations indicate that Davis did not afford him an opportunity to be heard or tell his side of the story before suspending him on December 19, 2018. (Doc. 12 at 5, ¶ 25 ("Plaintiff was given no procedural hearing before the suspension[;] Plaintiff was given no opportunity to give his side of the story prior to the suspension.").) Davis first held a hearing with S.M.A. and his parental guardians on December 21, 2018, after S.M.A. had already missed two

days of school. (*Id.* at 5, ¶ 27.) Nothing in the complaint indicates that S.M.A. posed a danger to any person or property on campus or posed a threat of ongoing disruption to the academic process as to warrant immediate removal without a prior hearing. Accordingly, the complaint contains sufficient allegations that Davis denied him sufficient process before depriving of his protected interest in attending school.

Moreover, Defendants' motion and reply brief does not raise any argument addressing the sufficiently of the procedures Defendants followed when S.M.A.'s guardians sought to remove the suspension from his record (e.g., not allowing his guardians to cross examine witnesses, not providing a copy of the snap chat video, not providing the names the witnesses). (*See* Doc. 12 at 5-8.) The Court, therefore, does not reach the issue of whether Defendants actions after S.M.A.'s suspension amount to a violation of procedural due process. Accordingly, S.M.A.'s claim may proceed on the allegations alleging denial of procedural due process for both pre-deprivation of and post-deprivation of his protected interest.

2. Protected Interest in Participation on Basketball Team

Defendants argue that S.M.A. cannot maintain a due process claim for his removal from the basketball team because access to school athletics is not a recognized liberated or property interest. (Doc. 13-1 at 7-8.) It is unclear whether S.M.A. intended to state a due process claim on this basis because his complaint only contains one sentence related to his basketball participation under the due process claim. S.M.A. states: "Plaintiff was further deprived of procedural due process and equal protection of the law by being removed from the basketball team without procedural due process . . ." (Doc. 12 at 9, ¶ 39.) S.M.A.'s opposition to the motion to dismiss does not address the issue. (Doc. 16.) Nonetheless, for the sake of completeness, the Court addresses Defendants' argument.

As a threshold matter for any due process claim, plaintiffs must identify a protectable liberty or property interest that the state deprived without due process. *United States v. Guillen-Cervantes*, 748 F.3d 870, 872 (9th Cir. 2014). Property rights are defined by state law. *Portman*, 995 F.2d at 904. Although the Ninth Circuit has never directly addressed this issue, California case law and this district have consistently held that no protectable interest exists in a student's

1    participation in school athletic programs. *Bailey v. Clovis Unified Sch. Dist.*, 2008 WL 410613, at

2    *5 (E.D. Cal. Feb. 12, 2008) ("[N]either 'the California Constitution nor California statutory law

3    contains any provision that entitles students to an absolute right to participate in ... interscholastic

4    athletics ...' so as 'to warrant due process protection.'") (citing *Ryan v. California Interscholastic*

5    *Federation-San Diego Section*, 94 Cal. App. 4th 1048, 1061 (2001)); *Sacramento State Univ.*

6    *Men's Rowing Club v. California State Univ.*, 2014 WL 546694, at **2-3 (E.D. Cal. Feb. 11,

7    2014); *see also Davis v. Folsom Cordova Unified School Dist.*, 2013 WL 268925, at **9-10 (E.D.

8    Cal. Jan. 23, 2013), *aff'd* 674 Fed. App'x 699 (9th Cir. 2017) (dismissing due process claim that

9    alleged deprivation of plaintiff's "dignity by public humiliation" for refusing to allow plaintiff to

10   participate in school cheer camp). Many other circuits have reached the same conclusion. *See e.g.*,

11   *Herbert v. Ventetuolo*, 638 F.2d 5, 6 (1st Cir. 1981) (high school students suspended from an ice

12   hockey team had no property or liberty rights to play interscholastic sports and were not entitled

13   to notice and hearing prior to suspension); *see also Walsh v. La. High Sch. Athletic Ass'n*, 616

14   F.2d 152, 1596 (5th Cir. 1980), *cert. denied*, 449 U.S. 1124 (student's interest in participating in a

15   single year of interscholastic athletes amounts to a mere expectation rather than a constitutionally

16   protected claim of entitlement).

17          Because no recognized property or liberty interest exists in student's access to athletic

18   programs, to the extent S.M.A. intended to raise a procedural due process claim based his

19   removal from the basketball team, this claim is **DISMISSED with prejudice**.

20          3.   Causation and Personal Involvement of Defendants

21          Defendants further argue that S.M.A.'s due process claim fails because the complaint does

22   not sufficiently plead that any Defendant "had personal involvement in the alleged wrongs."

23   (Doc. 13-1 at 8.) S.M.A.'s claims arise under 42 U.S.C. § 1983, which provides a private right of

24   action against a person acting under color of state law who deprives a citizen of "any rights,

25   privileges, or immunities secured by the Constitution and laws." To plead a § 1983 claim, the

26   plaintiff must demonstrate the defendant "caused" the plaintiff's deprivation. *See Monell v. Dep't*

27   *of Soc. Servs. City of New York*, 436 U.S. 658, 692 (1978); *Rizzo v. Goode*, 423 U.S. 362, 370-71

28   (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the

meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Id.* at 743-44.

Defendants' motion to dismiss delineates the complaints' allegations for each Defendant and concludes none had sufficient involvement in any "Constitutional deprivation." (Doc. 13-1 at 9-13.) As previously discussed, S.M.A.'s alleged constitutional deprivation consists of the improper procedures afforded to him both before the imposition of his suspension and during the attempts to remove the suspension from his record. The Court addresses, in turn, each Defendant's involvement in the alleged constitutional deprivation.

a.   *Davis*

The complaint states that Davis suspended S.M.A. from school "for three days without first providing S.M.A. a procedural hearing." (Doc. 12 at 4, ¶ 25.) "Plaintiff was never allowed to deny the allegations by Defendants prior to the suspension. Plaintiff had no hearing prior to the suspension and Plaintiff was not questioned about the December 17, 2018, video by Defendants prior to his suspension." (*Id.* at 5, ¶ 26.) The complaint makes clear that Davis made the decision to suspend S.M.A. without first giving him an opportunity to be heard. As explained above, these allegations suffice to plead deprivation of procedural due process. Accordingly, the complaint sufficiently pleads Davis's participation in the alleged constitutional loss. With respect to the post-deprivation due process claim, the complaint further alleges Davis participated in meetings with S.M.A.'s guardians where he denied them access to witnesses, evidence, and improperly relied on the snap chat video when refusing to remove the suspension from S.M.A.'s record. (Doc. 12 at 6-7.) Defendants conclude, without any legal support, that Davis's actions afforded S.M.A. "more process than that to which he was entitled." (Doc. 13-1 at 10.) Because Defendants have not properly briefed the issue of whether the post-deprivation procedures were sufficient, they have not met their burden on a motion to dismiss. *S.V. by and through Valencia v. Delano*

8

*Union Elementary Sch. Dist.*, 2018 WL 1726623, at *5 (E.D. Cal. Apr. 10, 2018) (denying motion to dismiss excessive force claim where defendants' briefing failed to address "substantive case law" and did not "present the Court with the relevant analysis" because "it is the Defendants' responsibility to identify case law and provide legal analysis to support their position for the dismissal of such claims"). "Viewing these allegations in the light most favorable to [plaintiff], the Court cannot say that [his] claim is utterly implausible." *J.F. by Abel–Irby v. New Haven Unified Sch. Dist.*, 2014 WL 250431, at *5 (N.D. Cal. Jan. 22, 2014). Accordingly, the complaint sufficiently pleads causation as to Davis.

b.    *Coats*

The complaint states that Coats participated in a meeting with S.M.A.'s parents in which they discussed the suspension and the snap chat video. (Doc. 12 at 7, ¶¶ 32-33.) Coats was also involved in the decision to deny the request to remove the suspension from S.M.A.'s record. (*Id.*) The allegations demonstrate that Coats directly participated in the series of events causing the alleged constitutional deprivation after the suspension, during attempts to have it removed. Defendants argue that because Coats participated in a process that included "hearing what everyone had to say," the allegations "fall short of demonstrating any Constitutional deprivation." (Doc. 13-1 at 11.) They again fail to provide any legal authority for their assertion. Defendants have not met their burden to show no valid cause of action exists. Because the complaint connects Coats to a series of events leading to his alleged constitutional losses, it sufficiently pleads causation as to Coats.

c.    *Bergerson*

S.M.A. alleges that Bergerson, the head basketball coach, informed S.M.A. that "he was kicked off the basketball team on January 14, 2019 'because of Plaintiff's suspension for a sexual act in the classroom.'" (Doc. 12 at 10-11, ¶ 46.) The allegations related to Bergerson's involvement appear only under the Title IX claim. The complaint contains no allegations explaining Bergerson's participation in the alleged due process violation, except for a general statement that asserts the due process claim against Bergerson. (*Id.* at 4.) Accordingly, the complaint fails to allege how Bergerson caused his due process violation. Even if the allegations

9

1    about being removed from the basketball team were incorporated into the due process claim, this

2    allegation could not suffice to show causation of a violation of due process because, as explained

3    above, access to school athletic programs does not constitute a protected property interest for

4    which due process must be afforded. Thus, the Court **DISMISSES without prejudice** the due

5    process claim against Bergerson. It is unclear how Bergerson, as a basketball coach, could have

6    been involved in decision-making surrounding S.M.A.'s suspension. However, the Court will

7    grant one final opportunity to amend the claim if S.M.A. can do so within the bounds of Rule 11.

8                    d.      *McCay*

9         S.M.A. alleges that McCay, a baseball coach, asked him "why is your fly down, your

10   girlfriend is not here." (Doc. 12 at 10-11, ¶ 46.) Like the allegations against Bergerson, all

11   allegations relating to McCay appear under the Title IX claim, except for a general statement

12   asserting the due process violation against McCay. (*Id.* at 4.) Accordingly, the complaint fails to

13   plead McCay's involvement in a deprivation of a protected right without due process, and the

14   Court **DISMISSES without prejudice** the due process claim against McCay. It is unclear how

15   McCay, as a baseball coach, could have been involved in decision-making surrounding S.M.A.'s

16   suspension. However, the Court will grant one final opportunity to amend the claim if S.M.A. can

17   do so within the bounds of Rule 11.

18                   e.      *Mack*

19        S.M.A. alleges Mack, the assistant superintendent, met with S.M.A.'s guardians and

20   advocates to discuss the snap chat video and the suspension. (Doc. 12 at 7-8, ¶¶ 35-36.)

21   According to the complaint, Mack could not identify any sexual activity in the video but

22   nonetheless refused to remove the suspension from S.M.A.'s record. (*Id.*) S.M.A. alleges that

23   Mack encouraged his parents to not file a complaint against the school and school district for the

24   mishandling of the suspension, he withheld evidence and witness statements used against S.M.A.,

25   and he maintained false allegations against S.M.A. (*Id.*) Defendant argues that the allegations

26   show Mack's involvement afforded S.M.A. procedural due process and thus, cannot demonstrate

27   a constitutional deprivation. (Doc. 13-1 at 13.) Defendants failed to provide any legal analysis or

28   authority for their conclusion. The complaint's allegations demonstrate Mack participated in the

1    series of events in which Defendants refused to remove the suspension from S.M.A.'s record

2    using procedures that allegedly did not afford due process. Because the Court views the facts in

3    the light most favorable to S.M.A. and because Defendants failed to meet their burden to show

4    the allegations cannot legally state a claim, the complaint sufficiently pleads causation with

5    respect to Mack.

6    **B.       Title IX Claim**

7            S.M.A. alleges that Modesto City School District violated Title IX through sex-based

8    discrimination and permitting sexual harassment of S.M.A.[1] Title IX states:

9            No person in the United States shall, on the basis of sex, be excluded from
             participation in, be denied the benefits of, or be subjected to discrimination under
10           any education program or activity receiving Federal financial assistance.

11   20 U.S.C. § 1681(a). Title IX prohibits discrimination on the basis of sex in relation to

12   participation or benefits of "any academic, extracurricular, research, occupational training, or

13   other education program or activity." 45 C.F.R. § 86.31(a). The prohibition against sex-based

14   discrimination applies to both disparate treatment on the basis of gender and gender-based or

15   sexual harassment. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 176-75 (2005); *Jeldness v.*

16   *Pearce*, 30 F.3d 1220, 1228 (9th Cir. 1994).

17           1.   Disparate Treatment

18           The complaint seems to allege disparate treatment as a part of the gender-based

19   discrimination because it states that S.M.A. was removed from the male basketball team but his

20   girlfriend was allowed to continue playing on the female basketball team, even though they both

21   allegedly engaged in the same sexual conduct. (Doc. 12 at 10, ¶ 45.) Defendants argue these

22   allegations do not state a valid claim because they do not indicate how the Modesto City School

23   District participated in this decision or otherwise had notice of the school's decision. (Doc. 13-1

24   at 14.) S.M.A. provided no legal analysis or otherwise responded to Defendants' argument,

25   making it unclear as to whether he intended to waive this claim. Accordingly, the Court

26   _____

27   [1] Under the Title IX claim, the complaint refers also to discrimination on the basis of race. (Doc. 12 at 9.) S.M.A.
     does not address this claim in his response to the motion to dismiss. Title IX does not cover discriminatory actions
28   motivated by race. To the extent S.M.A. intended to raise a Title IX claim based on race, this claim is **DISMISSED
     with prejudice**.

1  **DISMISSES without prejudice** the Title IX claim based upon disparate treatment to allow

2  S.M.A. to more clearly articulate the claim and identify how liability attaches to the Modesto City

3  School District for the school's allegedly discriminatory decision.

4      2.  Sexual Harassment

5          The complaint also raises a Title IX claim for sexual harassment by students and teachers.

6  (Doc. 12 at 10-13.) Liability under Title IX for sexual harassment extends to student-to-student

7  and teacher-to-student harassment in limited circumstances. *Davis Next Friend LaShonda D. v.*

8  *Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 643 (1999); *see also Gebser v. Lago Vista Independent*

9  *School Dist.*, 524 U.S. 274, 290-91 (1998). An action may be brought against a federal funding

10  recipient that acted with "deliberate indifference to known acts of harassment in its programs or

11  activities." *Davis*, 526 U.S. at 633. A federal recipient acts with deliberate indifference when it

12  has actual notice or knowledge of the harassment and responds in a manner that is "clearly

13  unreasonable in light of the known circumstances." *Id.* at 648. In addition to deliberate

14  indifference, the plaintiff must also show that the harassment is "so severe, pervasive, and

15  objectively offensive that it effectively bars the victim's access to an educational opportunity or

16  benefit." *Id.* at 633. In *Davis*, the Supreme Court clarified that "students often engage in insults,

17  banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students

18  subject to it," but Title IX does not apply to "simple acts of teasing and name-calling among

19  school children [] even where these comments target difference in gender." *Id.* at 651-52.

20          a.  *Deliberate Indifference*

21          Defendants argue that the complaint does not contain allegations sufficient to show

22  Modesto City School District acted with deliberate indifference. (Doc. 13-1 at 14.) More

23  specifically, Defendants contend S.M.A. failed to allege facts to show Modesto City School

24  District had the requisite notice of the alleged harassment. (Doc. 17 at 5-6.) The complaint states

25  that S.M.A.'s guardians and advocates met with Coats, principal of Grace Davis High School,

26  Mack, assistant superintendent of Modesto School District, and Tim Garcia, athletic director of

27  Modesto City School District, to report the incident in which McCay made a sexually related

28  comment to S.M.A. (Doc. 12 at 13, ¶ 47.) The complaint further alleges that S.M.A.'s parents and

1  grandparents "complained during several meetings with the Defendant MODESTO CITY

2  SCHOOL DISTRICT of the sexual harassing comments that S.M.A. was faced with daily by

3  classmates, students, teachers, and athletic personnel of Defendant MODESTO CITY SCHOOL

4  DISTRICT." (*Id.* at 12, ¶ 48.) S.M.A. also alleges that no disciplinary action was taken against

5  any of the individuals who had been accused of sexual harassment. (*Id.* at 10-13, ¶¶ 46-48.)

6         Taking the allegations in the complaint as true, S.M.A. has sufficiently pled that Modesto

7  City School District had actual notice of the ongoing harassment because he and his guardians

8  repeatedly notified District personnel. *Gebser*, 524 U.S. at 290 (holding actual notice to the

9  federal recipient occurs when given to "an official of the recipient entity with authority to take

10  corrective action to end the discrimination"). Moreover, failure to take any action to mitigate the

11  alleged sexual harassment constitutes an unreasonable response. *Id.* ("The administrative

12  enforcement scheme presupposes that an official who is advised of a Title IX violation refuses to

13  take action to bring the recipient into compliance. The premise, in other words, is an official

14  decision by the recipient not to remedy the violation."). The allegations that the District had

15  actual notice of the harassment and decided not discipline or take remedial action against the

16  harasser suffices to plead deliberate indifference.

17              b.      *Pervasive and Objectively Offensive Conduct*

18         Defendants also argue that the complaint fails to state allegations that show severe,

19  pervasive, and objectively offensive harassment. (Doc. 17 at 5.) The complaint states that S.M.A.

20  suffered sexual harassment from December 17, 2018 to May 31, 2019. (Doc. 12 at 10, ¶ 46.) The

21  harassment allegations include: "Plaintiff was falsely accused of sexual activity in the classroom

22  on the basis of a snap chat video . . . by unknown student or students"; Bergerson told plaintiff "I

23  kicked you off the basketball team because you were written up and suspended for committing a

24  sexual act in the class room"; McCay said to S.M.A. "Why is your fly down, your girlfriend is not

25  here;" and "numerous bullying and harassment from other students, classmates, as well as outside

26  students from other schools making inappropriate sexual harassment comments to Plaintiff on the

27  basis of the snap chat video." (*Id.* at 11-12 ¶ 46.)

28         Other conclusory allegations that S.M.A. experienced "harassment," simply recite claim

1    elements rather than provide pertinent factual details. S.M.A.'s allegations do not sufficiently

2    explain the nature of alleged "numerous bullying and harassment" from students and teachers

3    such that the Court can discern whether the statements were "acts of teasing or name-calling" or

4    objectively offensive such that it barred S.M.A. from participating in educational programs.[2] The

5    allegation that the school falsely accused him of engaging in sexual activity and that McCay made

6    a sexual comment in reference to his pants' zipper provide greater specificity and reflect the type

7    of sexual harassment prohibited under Title IX. However, the two incidents alone do not amount

8    to pervasive conduct.[3] *See Al-Rifai v. Willows Unified Sch. Dist.*, 2013 WL 2102838, at * 5 (E.D.

9    Cal. May 14, 2013). Whether the totality of S.M.A.'s allegations suffice to plead pervasive and

10   objectively offensive conduct is admittedly a close call. Because leave to amend is appropriate, as

11   discussed below, the Court finds it proper to **DISMISS without prejudice** the Title IX claim, so

12   that S.M.A. can more clearly articulate the factual circumstances of the harassment.

13   **C.     Punitive Damages under Title IX**

14          Defendants request that S.M.A.'s claim for punitive damages under Title IX be stricken

15   pursuant to Federal Rule of Civil Procedure 12(f)(2) because punitive damages are not an

16   available form of relief under Title IX. (Doc. 13-2 at 15.) Defendants rely to *Barnes v. Gorman*,

17   536 U.S. 181 (2002) for their contention. (*Id.*) However, *Barnes* Court did not directly address

18   whether Title IX permits punitive damages as an available form of relief. *Barnes*, 536 U.S. at

19   186-90. In *Barnes*, the issue focused on the availability of punitive damages under Title VI. *Id.*

20   The Supreme Court compared Title VI to Title IX and reasoned that the contractual nature of the

21   statutes limited the scope of available remedies to exclude punitive damage because they are not

22   available under breach of contract. *Id.* (explaining that the Title VI invokes Congresses power

23   under the Spending Clause through which states enter a contractual relationship by agreeing to

24

25   [2] The Court notes that, in his opposition, S.M.A. asserts that he had to transfer schools because of the harassment. (Doc. 16 at 10.) Although this fact may suggest the pervasiveness and severity of the harassment, it does not appear

26   within the complaint. The Court, therefore, cannot rely upon it in ruling on the motion to dismiss. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

27   [3] The action of falsely accusing S.M.A. of engaging in sexual conduct may not require the pervasive and objectively offensive standard, because it is an official action taken by the school rather than a teacher or student, but S.M.A.

28   does not assert this theory of liability in response to the motion to dismiss. The Court is hesitant to preclude dismissal on a theory S.M.A. does not asserts.

1   certain statutory restrictions to receive federal funding). District courts have relied on the

2   reasoning in *Barnes* to conclude that punitive damages are likewise unavailable under Title IX.

3   *See, e.g.*, *Videckis v. Pepperdine Univ.*, 2017 WL 11633265, at *1 (C.D. Cal. July 18, 2017); *see*

4   *also Richardson-Bass v. State Center Comm. Coll. Dist.*, 2020 WL 5658225, at *15 (E.D. Cal.

5   Sep. 23, 2020).

6          S.M.A. submitted no opposition or response to Defendants' request. Although motions to

7   strike under Rule 12(f) "are generally regarded with disfavor" (*Neilson v. Union Bank of Cal.,*

8   *N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003)) and "courts often require a showing of

9   prejudice by the moving party" (*Quintana v. Baca*, 233 F.R.D. 562, 564 (C.D. Cal. 2005)), the

10  lack of opposition by S.M.A. and the strong case law that bars punitive damages under Title IX

11  warrant granting Defendants' request. *See State of Cal. ex rel. State Lands Comm'n v. United*

12  *States*, 512 F. Supp. 36, 38 (N.D. Cal. 1981) ("However, where the motion may have the effect of

13  making the trial of the action less complicated, or have the effect of otherwise streamlining the

14  ultimate resolution of the action, the motion to strike will be well taken.").[4]

15  **D.     Leave to Amend**

16          S.M.A. requested leave to amend his complaint to "more clearly state their causes of

17  action against Defendants." (Doc. 16 at 11.) Rule 15 governs amendments to pleadings before

18  trial. Rule 15(a)(2) allows a party to amend its pleading with the court's leave, providing that "the

19  court should freely give leave when justice so requires." Fed. R. Civ. P. Rule 15(a)(2). This

20  policy should be applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*,

21  893 F.2d 1074, 1079 (9th Cir. 1990). Leave should be granted in the absence of a substantial

22  reason to deny, such as a showing of any of the factors set forth in *Foman v. Davis*, 371 U.S. 178,

23  182 (1962). These factors include "undue delay, bad faith or dilatory motive on the part of the

24  movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice

25  to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Id.*

26

27

28  _____

[4] S.M.A. also seeks punitive damages under his procedural due process claim. (Doc. 12 at 14.) Defendants did not address whether punitive damages may be available under this claim, and therefore, the Court does not reach the issue. Accordingly, the complaint may proceed on the claim for punitive damages under the due process claim.

Generally, dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." *Intri-Plex Techs. v. Crest Grp.*, 499 F.3d 1048, 1056 (9th Cir. 2007) (citing *In re Daou Sys., Inc.*, 411 F.3d 1006, 1013 (9th Cir. 2005)); *see also Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint ... constitutes an exercise in futility.").

Defendants argue that leave to amend should not be granted because amendment would not cure the complaint's deficiencies. (Doc. 17 at 4-5.) With respect to S.M.A.'s procedural due process claim for the deprivation of access to the basketball team, his Title IX claim asserting racial discrimination, and his claim for punitive damages under Title IX, the Court agrees. As discussed above, these claims fail as a matter of law not due to a lack of factual assertions in the complaint. However, with respect to the procedural due process claims against Defendants Bergerson and McCay and the Title IX claims, these claims failed due to an insufficient factual basis. Because there is no evidence of undue delay, bad faith, or dilatory motive, the Court finds it appropriate to allow S.M.A. to clarify these claims in amendment.

## IV.   ORDER

For the reasons set forth above, the Court ORDERS:

1.   Defendants' motion to dismiss (Doc. 13) is **GRANTED in part** as follows:

   a.   S.M.A.'s procedural due process claim based upon removal from the basketball team is **DISMISSED without leave to amend**;

   b.   S.M.A.'s procedural due process claim against Defendants Bergerson and McCay is **DISMISSED with leave to amend**.

   c.   S.M.A.'s Title IX claim for gender-based differential treatment is **DISMISSED with leave to amend**;

   d.   S.M.A.'s Title IX claim for sexual harassment is **DISMISSED with leave to amend**; and

   d.   To the extent S.M.A. claimed discrimination based upon race under Title IX, this claim is **DISMISSED without leave to amend**.

2.   Defendants' motion to dismiss (Doc. 13) is **DENIED in part** as to all remaining

1    claims.

2    3.    Defendants' request to strike the claim for punitive damages under Title IX (Doc.

3        13) is **GRANTED**.

4    4.    S.M.A. **SHALL** file an amended complaint with **thirty** days service of this order.

5        **Failure to do so will result in a dismissal with prejudice of all claims that are**

6        **dismissed herein.**

7

8    IT IS SO ORDERED.

9    Dated:   **January 18, 2023**

        UNITED STATES DISTRICT JUDGE

17